USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  07/16/2024

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Board of Trustees of the I.A.T.S.E. Annuity Fund et al., <br><br> Plaintiffs, <br><br> -against- <br><br> National Convention Service, LLC, <br><br> Defendant. | |

**24-cv-00019 (GHW) (SDA)**

<u>REPORT AND RECOMMENDATION</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE GREGORY H. WOODS, UNITED STATES DISTRICT JUDGE:**

Pending before the Court is a motion by Plaintiffs Board of Trustees of the I.A.T.S.E. Annuity Fund, Board of Trustees of the I.A.T.S.E. National Health and Welfare Fund, Board of Trustees of the I.A.T.S.E. National Pension Fund and Board of Trustees of the I.A.T.S.E. National Vacation Fund (collectively, the "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 55(b)(2) and Local Civil Rule 55.2(b), for a default judgment against defendant National Convention Services, LLC ("Defendant" or "NCS"). (Pls.' Not. of Mot., ECF No. 17.)

For the reasons set forth below, it is respectfully recommended that Plaintiffs' motion be GRANTED IN PART AND DENIED IN PART.

<u>BACKGROUND</u>[1]

The I.A.T.S.E. Annuity Fund (the "Annuity Fund"), the I.A.T.S.E. National Health and Welfare Fund (the "Health Fund"), the I.A.T.S.E. National Pension Fund (the "Pension Fund") and

---

[1] The facts set forth below are drawn from Plaintiffs' Complaint, ECF No. 1; the Declaration of Luke Powers, dated April 30, 2024, together with the exhibits thereto, ECF No. 19 ("Powers 4/30/24 Decl."); and the Declaration of Luke Powers, dated June 28, 2024, together with the exhibits thereto, ECF No. 25 ("Powers

the I.A.T.S.E. National Vacation Fund (the "Vacation Fund") (collectively, the "Funds") are multi-employer employee benefit plans established under Section 302(c)(5) of the Labor Management Relations Act of 1974 ("LMRA") and within the meaning of the Sections 3(3) and 502(d)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). (Compl. ¶ 5.) The Funds receive contributions from employers that are parties to collective bargaining agreements ("CBAs") with the International Alliance of Theatrical Stage Employees, Moving Picture Technicians, Artists and Allied Crafts of the United States and Canada ("IATSE") and its affiliated local unions on behalf of employees working under such agreements, and provide annuity, health, pension and/or vacation benefits to those qualified to receive them. (*Id*. ¶ 7.) Each of the Funds is managed by a Board of Trustees, comprised of an equal number of labor and management representatives, and those Boards are the Plaintiffs in this action. (*See* Powers 4/28/24 Decl. ¶ 9; Compl. at p. 8.)

NCS is a domestic limited liability company organized and existing under the laws of the State of New York. (Compl. ¶ 9.) NCS was engaged in the business of the production, installation, maintenance and dismantling of tradeshows, exhibitions and conventions. (*Id*. ¶ 10.) NCS employed various employees represented by certain affiliated IATSE local unions (the "IATSE Locals"), and was a party to CBAs with the IATSE Locals. (*Id*. ¶¶ 11-12; *see also* L13 CBA, ECF No. 19-9; L28 CBA, ECF No. 19-10; L99 CBA, ECF No. 19-11; L336 CBA, ECF No.19-12; L829 CBA, ECF No. 19-13.) Pursuant to the CBAs, NCS was obligated to make annuity, health, pension and vacation contributions to the Funds on behalf of NCS's employees covered by the CBAs. (Compl. ¶ 13.)

---

6/28/24 Decl."). In light of Defendant's default, the Court accepts Plaintiffs' allegations as true, except for those pertaining to damages. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

The Funds were established by Agreements and Declarations of Trust, restated as of September 22, 2005 (collectively, the "Trust Agreements"). (Powers 6/28/24 Decl. ¶ 6; *see also* Annuity Trust Agmt., ECF No. 19-1; Health Trust Agmt., ECF No. 19-2; Pension Trust Agmt., ECF No. 19-3; Vacation Trust Agmt., ECF No. 19-4.) Pursuant to the Trust Agreements, the Trustees of each of the Funds established "Statements of Policy and Procedures for Collection of Contributions Payable by Employers" (the "Delinquency Guidelines") (Powers 6/28/24 Decl. ¶ 7; *see also* Annuity Delinquency Guidelines, ECF No. 19-5; Health Delinquency Guidelines, ECF No. 19-6; Pension Delinquency Guidelines, ECF No. 19-7; Vacation Delinquency Guidelines, ECF No. 19-8.) Pursuant to the Trust Agreements, the Trustees are "empowered to initiate whatever actions or proceeding may be proper and necessary in their sole and absolute discretion for the enforcement of [the] Employer's contribution obligations to the Trust." (Annuity Trust Agmt. at PDF p. 31; Health Trust Agmt. at PDF p. 31; Pension Trust Agmt. at PDF pp. 48-49; Vacation Trust Agmt. at PDF p. 31.)

Pursuant to the Delinquency Guidelines, if an employer like NCS fails to submit payments when due, the Funds are "empowered to make a reasonable estimate of the amounts due and such estimated amounts shall thereupon become immediately due unless the employer can refute the estimate on the basis of clear and convincing proof." (Annuity Delinquency Guidelines at PDF p. 6; Health Delinquency Guidelines at PDF p. 4; Pension Delinquency Guidelines at PDF pp. 5-6; Vacation Delinquency Guidelines at PDF p. 5.) The Funds are entitled to interest on the unpaid contributions at an interest rate determined by the Prime Rate published in the New York

Times or the Wall Street Journal plus 1%.[2] (Annuity Delinquency Guidelines at PDF p. 6; Health Delinquency Guidelines at PDF p. 4; Pension Delinquency Guidelines at PDF pp. 5-6; Vacation Delinquency Guidelines at PDF p. 6.) The Prime Rate used is the Prime Rate published closest to January 1 or July 1.[3] (Annuity Delinquency Guidelines at PDF p. 6; Health Delinquency Guidelines at PDF p. 4; Pension Delinquency Guidelines at PDF pp. 5-6; Vacation Delinquency Guidelines at PDF p. 6; Powers 6/28/24 Decl. ¶¶ 8-9 & Ex. A.)

Pursuant to the Trust Agreements and the Delinquency Guidelines, the Funds may seek liquidated damages equal to the greater of the amount of, the interest due, or twenty percent of the amount of unpaid contributions. (Annuity Trust Agmt. at PDF p. 32; Health Trust Agmt. at PDF p. 30; Pension Trust Agmt. pp. 43, 48; Vacation Trust Agmt. at PDF p. 30; Annuity Delinquency Guidelines at PDF pp. 7, 8, 11; Health Delinquency Guidelines at PDF pp. 7, 8, 11; Pension Delinquency Guidelines at PDF pp. 7, 8, 11; Vacation Delinquency Guidelines at PDF p. 7, 8, 11.) In any collection action, the Funds may seek costs and attorneys' fees. (Annuity Delinquency Guidelines at PDF p. 8; Health Delinquency Guidelines at PDF p. 8; Pension Delinquency Guidelines at PDF p. 8; Vacation Delinquency Guidelines at PDF p. 8.)

---

[2] The Trust Agreement for the Vacation Fund provides for interest at the Prime Rate plus 5%; however, the Delinquency Guidelines for the Vacation Fund subsequently adopted the "Prime Rate plus 1%" standard. (*See* Vacation Trust Agmt. at PDF p. 30; Vacation Delinquency Guidelines at PDF p. 6.) The interest due for the Vacation Fund has been calculated at the Prime Rate plus 1%. (Powers 6/28/24 Decl. ¶ 10.)

[3] This means that, when charging interest on a payment due on April 10, 2019, up and until the July Prime Rate is reported by the *New York Times* or the *Wall Street Journal*, the January Prime Rate +1% is charged; after the July Prime Rate is reported, the same payment that was due on April 10, 2019 will be charged the July Prime Rate +1%. This process of alternatively charging the closest of the January or July Prime Rate +1% continues yearly until the payment due is collected. (*See* Powers 6/28/24 Decl. ¶ 8 & Ex. A.)

4

In or about May 2022, after an audit of NCS's accounts and records, the Funds issued and sent to NCS a draft audit report ("DAR") requesting contributions due for the period January 1, 2019 through December 31, 2020. (Powers 4/30/24 Decl. ¶¶ 35-36; *see also* DAR, ECF No. 19-14, at PDF p. 2.) The contributions due totaled $135,478.12, including interest. (DAR at PDF p. 2.)

In February 2023, NCS provided additional documents and information to the Funds. (Powers 4/30/24 Decl. ¶ 38.) On December 12, 2023, the Funds issued a final audit, which amended the amount of contributions due, and requested payment of the amount due. (*Id*. ¶¶ 39-41; *see also* Audit, ECF No. 19-15.) The contributions due based on the audit totaled $92,552.05, including interest. (Audit at PDF p. 2.) Despite multiple demands, NCS has failed and refused to make the payments due to Plaintiffs. (Powers 4/30/24 Decl. ¶ 42.)

## PROCEDURAL HISTORY

On January 2, 2024, Plaintiffs filed the Complaint in this action seeking recovery of unpaid contributions, interest, liquidated damages, costs and attorneys' fees. (*See* Compl. at pp. 12-13.) On January 3, 2024, this action was referred to the undersigned for general pretrial management and dispositive motions. (Order of Ref., ECF No. 6.) Defendant was served with the Summons and Complaint on January 25, 2024 (Summons Returned Executed, ECF No. 11), but failed to appear by counsel in this action.[4]

On April 8, 2024, the Clerk of Court entered a Certificate of Default against Defendant. (Cert. of Default, ECF No. 15.) On April 30, 2024, Plaintiffs filed the motion for default judgment that is now before the Court. (*See* Pls.' Not. of Mot.) Accompanying its motion, Plaintiff filed at

---

[4] Because Defendant is a limited liability company, it must appear through counsel. *See Lattanzio v. COMTA*, 481 F.3d 137, 140 (2d Cir. 2007).

ECF Nos. 18 to 20 and 22 a memorandum of law, two Declarations (including the Powers 4/30/24 Decl.) and Proposed Findings of Fact and Conclusions of Law.

On June 28, 2024, Plaintiffs filed an additional Declaration updating the amounts due from Defendant. (*See* Powers 6/28/24 Decl.)

## LEGAL STANDARDS

Although a party's default is viewed as a concession of all well-pled allegations of liability, it is not considered an admission of damages. "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true." *Am. Jewish Comm. v. Berman*, No. 15-CV-05983 (LAK) (JLC), 2016 WL 3365313, at *3 (S.D.N.Y. June 15, 2016) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)), *report and recommendation adopted*, 2016 WL 4532201 (S.D.N.Y. Aug. 29, 2016). "The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id*. Plaintiffs "bear the burden of establishing their entitlement to recovery and thus must substantiate their claims with evidence to prove the extent of their damages." *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 826 F. Supp. 2d 619, 627 (S.D.N.Y. 2011) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)).

The decision on whether to hold a hearing on damages in the context of default judgment is left "to the discretion of the district court." *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989); *see also* Fed R. Civ P. 55(b)(2) ("The court may conduct hearings . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages . . . ."). "Where damages are susceptible to simple mathematical calculation and the plaintiff provides a sufficient

basis from which to evaluate the fairness of the requested damages, no evidentiary hearing is necessary." *HSBC Bank USA, N.A. v. PAKS Holdings, LLC*, No. 19-CV-10193 (PGG) (JLC), 2021 WL 667661, at *4 (S.D.N.Y. Feb. 22, 2021), *report and recommendation adopted*, 2021 WL 5042710 (S.D.N.Y. Oct. 28, 2021) (internal quotation marks omitted).

**DISCUSSION**

As an initial matter, the Court finds that the documentary evidence submitted by Plaintiffs is sufficient for the Court to determine damages. Moreover, no party has requested a hearing and Defendant has not contested Plaintiffs' submissions. Accordingly, the Court does not find a hearing necessary and, instead, has conducted the inquest based solely on the materials filed by Plaintiffs. *See JTH Tax LLC v. Sanchez*, No. 22-CV-06160 (AS) (JLC), 2023 WL 6813449, at *3 (S.D.N.Y. Oct. 16, 2023), *report and recommendation adopted*, 2023 WL 8936352 (S.D.N.Y. Dec. 27, 2023) (hearing unnecessary when plaintiff's submissions were uncontested and provided all information necessary to determine damages); *Reilly v. Plot Commerce*, No. 15-CV-05118, 2016 WL 6837895 (PAE) (BCM), at *2 (S.D.N.Y. Oct 31, 2016) (conducting inquest "based solely on materials submitted by plaintiff" when neither party requested hearing and defendant did not submit any written materials).

"[E]ven in the context of a default judgment, a district court is . . . required to determine whether [plaintiff's] allegations establish [defendant's] liability as a matter of law." *Bracken v. MH Pillars Inc.*, 290 F. Supp. 3d 258, 264 (S.D.N.Y. 2017) (citing *Finkel*, 577 F.3d at 84). Thus, the

Court first considers whether, assuming the allegations in the Complaint are true, Defendant is liable for each of the claims asserted, before addressing the damages due to Plaintiffs.

I.    **Liability**

Plaintiffs seek a default judgment against Defendants under Section 515 of ERISA and Section 301 of the LMRA. (Pls.' 4/30/24 Mem., ECF No. 18, at 9-11.) Under Section 515 of ERISA, an employer "who is obligated to make contribution to a multiemployer plan . . . under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in  accordance with the terms and conditions of  . . . such agreement." 29 U.S.C §1145. A plaintiff may bring an action under Section 515 to enforce an employer's promise to make contributions according to the terms of a collective bargaining agreement. *See Cummings v. Quick Start Day Care Ctr. Inc.*, No. 23-CV-05244 (LJL), 2024 WL 68552, at *3 (S.D.N.Y. Jan. 5, 2024).

As alleged in the Complaint, under the terms of the CBAs, Defendant was required to make contributions to the Funds, but failed to do so. (*See* Compl. ¶¶ 15, 19, 22, 25, 28, 43-45.) "Because [these] allegation[s] establish[] breach of the [CBAs], [they] also establish[] liability under Section 301 of the LMRA." *Mason Tenders Dist. Council Welfare Fund v. Shelbourne Constr. Corp.*, No. 19-CV-07562 (AJN), 2020 WL 7028530, at *5 (S.D.N.Y. Nov. 30, 2020).

Under Section 301 of the LMRA, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . .may be brought in any district court of the United States having jurisdiction of the parties[.]" 29 U.S.C § 185(a). Under Section 301, an employer may be liable for failing to remit contributions as required by the terms of a CBA. *See Trustees of Sheet Metal Workers' Loc. Union No. 28 Funds &*

*Plans v. Air Wise Heating & Cooling, Inc.*, No. 18-CV-11569 (JGK) (GWG), 2020 WL 2846693, at *2 (S.D.N.Y. June 2, 2020), *report and recommendation adopted*, 2020 WL 3440503 (S.D.N.Y. June 23, 2020).

Accordingly, by failing to make contributions as required by the CBA, Defendant has violated Section 515 of ERISA and Section 301 of the LMRA. *See Gesualdi v. Pecgro Trucking, Inc.*, No. 14-CV-06347 (JS) (GRB), 2015 WL 5608149, at *3 (E.D.N.Y. Aug. 13, 2015), (recommending grant of motion for default judgment and finding defendant liable under ERISA § 515 and LMRA § 301 where defendant "failed to pay certain contributions as revealed by audits"), *report and recommendation adopted*, 2015 WL 5608157 (E.D.N.Y. Sept. 23, 2015). The Court now turns to the amount of damages (including prejudgment interest) and attorneys' fees and costs to award.

## II.      Damages

Plaintiffs seek to recover unpaid contributions, pre-judgment interest and liquidated damages. (Pls.' 4/30/24 Mem. at 13-19.) These are considered in turn.

### A.      Unpaid Contributions

Plaintiffs are entitled to recover the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2)(A). Pursuant to the Trust Agreements and Delinquency Guidelines, the Funds conducted a payroll audit of Defendant with respect to its obligation to contribute to the Funds for the period January 1, 2019 through December 31, 2020 and determined that Defendant failed to make contributions to the Funds as required by the CBAs in the amount of $75,243.65. (Powers 4/30/24 Decl. ¶¶ 39, 47.) Defendant has defaulted and thus has not introduced any evidence that would suggest the audit's findings are inaccurate. Thus, the audit establishes that the delinquent contributions total $75,243.65. *See Bd. of Trustees of Am. Fed'n of Musicians & Employers' Pension Fund v. Banos*,

9

No. 18-CV-04250 (JGK) (KHP), 2019 WL 2477316, at *4 (S.D.N.Y. May 24, 2019) ("Courts award ERISA benefit plans contributions based on their audit unless the employer can raise a genuine issue of material fact as to the accuracy of the calculations made by the plan, and if there are inaccuracies in an audit due to the employer's records, the plan's audit is accepted." (citations omitted), *report and recommendation adopted as modified*, 2019 WL 2473452 (S.D.N.Y. June 13, 2019).

B.    **Pre-Judgment Interest**

Plaintiffs are entitled to interest on the unpaid contributions. *See* 29 U.S.C. § 1132(g)(2). Pursuant to the Trust Agreements and Delinquency Guidelines, the Funds are entitled to interest on the unpaid contributions from the due date of each such contribution at the Prime Rate plus 1%. (Powers 6/28/24 Decl. ¶¶ 7-10.) The Court carefully has reviewed the latest interest calculations provided by Plaintiffs, as contained in the June 28, 2024 Powers Declaration (with the benefit of the native Excel spreadsheets submitted to the Court per the Court's June 21, 2024 Order (ECF No. 24)) and finds them to be accurate, except in one minor respect.

In the interest calculations for the contributions due to the health fund on behalf of Local 13, found on the spreadsheet covering the period January 1, 2019 through December 31, 2019 (*see* ECF No. 25-1 at PDF pp. 2-3), Plaintiffs mistakenly used the wrong formula in Column L (*i.e.*, the eleventh column from the left, since the spreadsheet did not contain a Column C). The formula used was =$N$4-$L$4+1, instead of =$L$4-$K$4+1. The Court has corrected this error in the spreadsheet annexed hereto as Appendix A, and the revised Column L is highlighted in yellow in the Appendix. This results in the prejudgment interest due as of June 28, 2024 being reduced

from the $22,680.67 sought by Plaintiffs (*see* Powers 6/28/24 Decl. ¶ 16) to $22,262.93. As reflected in the chart below.

| Fund | Interest as of June 28, 2024 |
|---|---|
| Health Fund | $18,905.69[5] |
| Annuity Fund | $1,678.62 |
| Pension Fund | $1,013.35 |
| Vacation Fund | $665.27 |
| **Total** | **$22,262.93** |

The Court thus recommends that Plaintiffs be awarded pre-judgment interest in the amount of $22,262.93 as of June 28, 2024. In the event that Plaintiffs seek to obtain additional interest from June 28, 2024 to the date that District Judge Woods enters an Order with respect to the recommendations contained herein, Plaintiffs shall make an appropriate application to Judge Woods.

### C.      Liquidated Damages

Plaintiffs are entitled to liquidated damages in a suit brought to enforce Section 515 of ERISA. 29 U.S.C. §1132(g)(2)(C). Where the terms and conditions of the CBA and collections policies obligate an employer to pay liquidated damages the court see "no reason to limit the

---

[5] The error mentioned in the text above only affected the calculation of interest for the Health Fund. The Health Fund is comprised of health funds for various local unions. The error appears on the spreadsheet for the Local 13 health plan. The spreadsheet attached to the June 28, 2024 Powers Declaration calculates the interest for the Local 13 health fund covering the period January 1, 2019 through December 31, 2019 as $4,635.51. (*See* ECF No. 25-1 at PDF p. 3.) The correct interest figure is $4,217.77 (*see* Appendix A hereto), which is a difference of $417.74. For the Health Fund as a whole, the interest due as of June 28, 2024 is reduced from the $19,323.43, as calculated by Plaintiffs to the correct number of $18,905.69, as reflected in the chart above.

availability of relief under § 1132(g)(2*)." Iron Workers Dist. Council of W. N.Y & Vicinity Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc.*, 68 F.3d 1502, 1507 (2d Cir. 1995). Pursuant to these Trust Agreements and the Delinquency Guidelines, the Funds may seek liquidated damages "equal to the greater of the amount of the interest due or twenty percent of the amount of unpaid contributions." (Annuity Trust Agmt. at PDF p. 32; Health Trust Agmt. at PDF p. 30; Pension Trust Agmt. pp. 43, 48; Vacation Trust Agmt. at PDF p. 30; Annuity Delinquency Guidelines at PDF pp. 7, 8, 11; Health Delinquency Guidelines at PDF pp. 7, 8, 11; Pension Delinquency Guidelines at PDF pp. 7, 8, 11; Vacation Delinquency Guidelines at PDF p. 7, 8, 11.)

The total in unpaid contributions is $75,243.65. Twenty-percent of $75,243.65 is $15,048.73. The total interest calculated on the late contributions is $22,262.93. As $22,262.93 is larger than $15,048.73, Plaintiffs should be awarded $22,262.93 in liquidated damages.

### D.    Attorneys' Fees and Costs

#### 1.    Legal Standards

Plaintiffs are entitled to recover reasonable attorneys' fees and costs. *See also Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds of Int'l Union of Operating Engineers Loc. 15 , 15A, 15C & 15D, AFL-CIO by Callahan v. PETK, Inc.,* No. 22-CV-03559 (LDH) (LB), 2022 WL 19520880, at *7 (E.D.N.Y. Oct. 13, 2022); *see also* 29 U.S.C. § 1132(g)(2)(D). In the Second Circuit, courts determine a "presumptively reasonable fee" award by calculating the product of the hours reasonably expended and a reasonable hourly rate, which is often called the "lodestar" method. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008). In calculating the "presumptively reasonable fee," the court looks to what a "reasonable,

paying client, who wishes to pay the least amount necessary to litigate the case effectively" would be willing to pay. *Id*. at 184.

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). A reasonable rate is generally the "prevailing market rate[] for counsel of similar experience and skill to the fee applicant's counsel." *Farbotko v. Clinton Cnty*., 433 F.3d 204, 209 (2d Cir. 2005). In deciding what constitutes a reasonable rate, a court may consider "rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Id*.

To support their request for attorneys' fees, plaintiffs must submit "contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). In calculating the reasonable number of hours expended "the court takes account of claimed hours that it views as 'excessive, redundant, or otherwise unnecessary.'" *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (quoting *Hensley*, 461 U.S. at 434). In so doing, the court "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *DiFilippo v. Morizio*, 759 F.2d 231, 236 (2d Cir. 1985).

A court should consider other case-specific variables when determining the amount of attorneys' fees to award, pursuant to the so-called *Johnson* approach, based upon the Fifth

Circuit's decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 187 (citing *Johnson*, 488 F.2d at 717-19). "[W]hile a strict application of the *Johnson* method of calculating attorney's fees used by the Fifth Circuit is too imprecise and variable to be reliable, the twelve Johnson factors remain important tools for helping district courts calculate the lodestar and, in exceptional cases, determining whether an enhancement or cut to the lodestar is warranted." *Lilly v. City of New York*, 934 F.3d 222, 233 (2d Cir. 2019).

"[T]he determination of fees should not result in a second major litigation." *Fox v. Vice*, 563 U.S. 826, 838 (2011) (citation and internal quotation marks omitted). "The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*.

###### 2.    <u>Application</u>

Plaintiffs seek to recover $9,984.00 in attorneys' fees and $507.50 in costs. (Spaur Decl., ECF No. 20, ¶ 18.) The billing records submitted by Plaintiffs reflect that Attorney Saravati Spaur billed 25.1 hours at an hourly rate of $380.00 for 2023 and $400.00 for in 2024. (Billing Records, ECF No. 20-4; *see also* Spaur Decl. ¶ 20.)

The Court first considers a reasonable hourly rate for Attorney Spaur. Attorney Spaur is an associate at the law firm Spivak Lipton LLP ("Spivak Lipton") and is a 2020 graduate of the New York University School of Law. (Spaur Decl. ¶¶ 1, 19-20, 22.) Since her admission to the bar in 2021, her practice has been devoted almost exclusively to the representation of employee benefit plans and labor unions. (*Id*. ¶ 22.)

In 2014, in a case in the Eastern District of New York, a partner at Spivak Lipton with over 20 years of experience in the areas of labor and employee benefits law, who had handled numerous ERISA collection actions, sought and had approved an hourly rate of $225.00 in connection with a motion for a default judgment. *See Boards of Trustees of Ins., Annuity, & Apprenticeship Training Funds of Sheetmetal Workers' Int'l Ass'n, Loc. Union No. 137 v. Frank Torrone & Sons, Inc.*, No. 12-CV-03363 (KAM) (VMS), 2014 WL 674098, at *9 (E.D.N.Y. Feb. 3, 2014).

Courts in this District recently have found that an hourly rate in the range of $275.00 to $290.00 to be appropriate for associates in ERISA actions. *See Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Vision Constr. & Installation, Inc.*, No. 24-CV-02503 (PAE), 2024 WL 2963729, at *4 (S.D.N.Y. June 12, 2024) (reducing hourly rate for two 2021 law school graduates in ERISA matter from $310.00 to $290.00); *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Precision Furniture Installations, LLC*, No. 23-CV-02852 (JHR), 2024 WL 1381309, at *8 (S.D.N.Y. Apr. 1, 2024) (reducing associate attorney's hourly rate in ERISA matter from $310.00 to $275.00).

Considering all the relevant factors, the Court finds that an hourly rate of $290.00 for Attorney Spaur to be reasonable. The Court has reviewed the billing records and finds the number of hours billed by Attorney Spaur to be reasonable. Accordingly, the Court recommends that Plaintiffs be awarded attorneys' fees in the amount of $7,279.00 (25.10 hours x $290.00 per hour).

Plaintiffs seek $507.50 in costs, comprised of $405.00 in filing fees and $102.50 in process server fees. (Spaur Decl. ¶ 24.) Recovery of filing fees and service of process fees "is routinely permitted." *New York City & Vicinity Dist. Council of Carpenters v. Plaza Constr. Grp., Inc.*, No. 16-CV-01115 (GHW), 2016 WL 3951187, at *2 (S.D.N.Y. July 19, 2016) (collecting cases). Thus, it is recommended that Plaintiffs recover the sum of $507.50 in costs.

### E.      Post-Judgment Interest

Finally, Plaintiffs seek post-judgment interest. (Pls.' 4/30/24 Mem. at 19.) By statute, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and "[s]uch interest shall be calculated from the date of the entry of the judgment." 28 U.S.C. § 1961(a). Because an award of post-judgment interest is mandatory, *see Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008), the Court recommends that post-judgment interest be awarded.

### CONCLUSION

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion for a default judgment be GRANTED IN PART and DENIED IN PART. Specifically, it is recommended that the Court enter judgment in favor of Plaintiffs against Defendant as follows:

1.      Awarding unpaid contributions in the amount of $75,243.65;

16

2.      Awarding prejudgment interest in the amount of $22,262.93;

3.      Awarding liquidated damages in the amount of $22,262.93;

4.      Awarding attorneys' fees in the amount of $7,279.00;

5.      Awarding costs in the amount of $507.50; and

6.      Awarding post-judgment interest.

No later than July 18, 2024, Plaintiffs shall serve by mail upon Defendant a copy of this Report

and Recommendation and file proof of service.

Dated:      New York, New York
            July 16, 2024

_____
**STEWART D. AARON**
**United States Magistrate Judge**

*          *          *

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service

of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)

and Rule 72(b) of the Federal Rules of Civil Procedure. A party may respond to another party's

objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Such

objections, and any response to objections, shall be filed with the Clerk of the Court. *See* 28 U.S.C.

§ 636(b)(1); Fed. R. Civ. P. 72(b). Any requests for an extension of time for filing objections must

be addressed to Judge Woods.

17

**THE FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).